IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 7, 2026

## STATE OF TENNESSEE v. NOLAN T. WILLIAMS

**Appeal from the Circuit Court for Weakley County**
**No. 2023-CR-92      Jeff Parham, Judge**

_____

### No. W2025-00586-CCA-R3-CD

_____

The defendant, Nolan T. Williams, pled guilty to rape.  After a sentencing hearing, the trial court ordered the defendant to serve an eight-year sentence in confinement with the Tennessee Department of Correction.  On appeal, the defendant contends the trial court erred in sentencing him to confinement.  Following review, we dismiss the appeal as untimely.

**Tenn. R. App. P. 3 Appeal ;  Appeal Dismissed**

J. ROSS DYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and MATTHEW J. WILSON, JJ., joined.

Joseph A. McClusky, Memphis, Tennessee, for the appellant, Nolan T. Williams.

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth Evan, Assistant Attorney General; Colin Johnson, District Attorney General; and James Washburn, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

On January 21, 2025, the defendant pled guilty to one count of rape, with sentencing to be determined by the trial court.[1]  On March 24, 2025, a sentencing hearing was held, during which the trial court adopted the following uncontested facts into the record:

---

[1] The defendant was also indicted for a second count of rape, which the State dismissed pursuant to a plea agreement with the defendant.

On April 2, 2023, the victim, M.S., and several friends traveled to Martin, Tennessee, to celebrate her birthday.[2]  Initially, they attended a fraternity party and eventually made their way to a local bar where the defendant was present.  While at the bar, the defendant interacted with several of M.S.'s friends; however, the defendant and M.S. did not speak to each other.  In order to avoid driving while intoxicated, M.S. and her friends obtained a hotel room.  The defendant told investigators that he left the bar and was in the process of returning home when he received a telephone call from a friend who was at the hotel with M.S.'s companions.  According to the defendant, the friend said, "they had a girl for me."

After the defendant arrived at the hotel, he and M.S. sat and talked together at a table in the bedroom that was shared with the group.  At some point, M.S. left to use the bathroom.  The defendant followed her into the bathroom and locked the door behind him.  Once inside the bathroom, the defendant anally penetrated M.S. without her consent.  M.S. reported shaking her head and verbalizing "no" several times during the encounter.  M.S. told investigators that she pretended to "pass out" in an attempt to end the assault, and the defendant left the bathroom.  However, he quickly returned and attempted to penetrate M.S. vaginally.  The defendant admitted to investigators that M.S. was "still saying no" when he returned to the bathroom and attempted to penetrate her vaginally.  When M.S. was able to unlock the door, she called for help, and the defendant left the scene.

During the sentencing hearing, a pre-sentence report and a psychosexual evaluation were entered into evidence.  The defendant's pre-sentence report indicated the defendant lacked a criminal record and did not have a history of substance abuse.  The defendant had also achieved a high school diploma and was employed at the time of his arrest.  The presentence report categorized the defendant with a low risk of reoffending.

The psychosexual evaluation of the defendant found the defendant's level of honesty to be "poor" as he continued to "deny having committed a sexual offense."  The report stated the defendant's "current level of honesty is associated with a poor prognosis in community-based treatment."  The report further highlighted the defendant's belief that "he does not feel that he did anything wrong at all."  As it related to victim empathy, the psychosexual report stated that the defendant "does not feel his actions affected the victim in any way and that there was no harm done."  Based upon his responses during the evaluation, the defendant was scored on both the Static-99R and the Stable-2007 tests, which measure risk for sexual recidivism, as "Above Average Risk Level" and as "High Risk" respectively.  The psychosexual report also included the Bumby Cognitive Distortions Scale, an instrument used to "assess the cognitive distortions of sexual

---

[2] It is the policy of this Court to refer to victims of sexual crimes by their initials. For purposes of this opinion, "the victim" will be referenced as M.S. unless otherwise noted.

aggressors," which found the defendant had several distortions which would "attribute to a risk to sexually offend." Overall, the report found the defendant "demonstrated a number of dynamic risk factors associated with risk to re-offend" and, ultimately, categorized the defendant to be a "high risk" to sexually re-offend.

At the hearing, M.S. gave a victim impact statement in which she described experiencing flashbacks, nightmares, panic attacks, and an extreme fear of public restrooms as a result of the defendant's assault. While some of her symptoms had decreased with time, M.S. testified that she does not "go out in public anymore." She requested the trial court impose a sentence "that reflect[ed] the harm that has been done," specifically, confinement.

Investigator James Hatler, an officer with the Martin Police Department, testified on behalf of the defendant. Inv. Hatler stated that the defendant had been cooperative during the investigation, taking responsibility for his actions, and he commended the defendant. On cross-examination, however, Inv. Hatler agreed that the defendant originally denied the accusations, but after he had been confronted with the victim's statement, he took responsibility.

The defendant testified on his own behalf. Initially, the defendant apologized to the victim and took responsibility. On cross-examination, however, the defendant denied sexually assaulting and injuring the victim by leaving bruises and a scar. The defendant reiterated his belief that his assault "did not affect the victim in any way and that there was no harm done."

The defendant's mother, Priscilla Anthony, and his girlfriend, Anissa Cooper, also testified at the hearing. They testified that the defendant was employed prior to his arrest and that he could live with them upon his release. They both believed he would be successful on probation.

Following testimony and argument from counsel, the trial court stated it had considered the evidence presented, the presentence report, the sex-offender risk assessment, the principles of sentencing, and the statistical information as to sentencing practices for similar offenses. In considering alternative sentencing, the trial court examined the arguments made for sentencing alternatives, the nature and characteristics of the conduct involved, the evidence presented on enhancement factors, the statement of the defendant, and the defendant's potential for rehabilitation.

While the trial court noted the defendant's lack of a criminal record, it found enhancement factor (7), the crime was committed for sexual gratification, applicable to the defendant. The trial court considered whether the "interest of society is being protected

from possible future conduct of the defendant is great," highlighting the defendant's "high" classification for sexual recidivism. The trial court stated it understood that classification "in light of the fact that [the defendant's] testimony today where he said the victim wasn't a victim, even though he's pled guilty to it, and that today he basically says it was consensual for the first time that I've seen." Lastly, the trial court "considered whether or not confinement was particularly suited to prevent an effective deterrent to others likely to commit similar offenses." As a result, the trial court ordered the defendant to serve his eight-year sentence in confinement.

On April 24, 2025, the defendant's Notice of Appeal was electronically filed with the Appellate Court Clerk.[3]

### *Analysis*

On appeal, the defendant challenges the trial court's sentencing determination of eight years in confinement. Specifically, the defendant contends the trial court failed to meet the requirements of Tennessee Code Annotated section 40-35-103(1) and made "no findings as to the need to avoid depreciating the seriousness of the offense." The State maintains the trial court acted within its discretion. The State also notes the untimely filing of the defendant's notice of appeal. After a review of the record, we agree with the State and conclude the defendant's appeal is untimely and, therefore, is dismissed.

Pursuant to Rule 4, Tennessee Rules of Appellate Procedure, a notice of appeal shall be filed within thirty days after entry of the judgment from which an appeal is sought. Tenn. R. App. P.4(a). In criminal proceedings, however, the notice is not jurisdictional. *Id.* Accordingly, this Court may review untimely appeals and determine whether the notice requirement should be waived. *Id.* "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). "To hold otherwise, by summarily granting waiver whenever confronted with untimely notices, renders the thirty-day requirement a legal fiction and circumvents the Rule." *Hill v. State*, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App. Feb. 13, 1996). It is the burden of the petitioner to establish that a waiver of the notice of appeal is appropriate. Tenn. R. App. P. 4(b).

Here, the trial court's order reflecting the defendant's sentence was filed on March 24, 2025. While the defendant's Notice of Appeal was dated April 23, 2025, it was

---

[3] This Court takes notice that the defendant's Notice of Appeal reflects an intended submission date of April 23, 2025.

electronically filed on April 24, 2025, the thirty-first day following the entry of sentence.[4] Therefore, the notice of appeal was untimely.

While this Court retains the authority to waive the timeliness requirement of the appeal, the defendant neither provided a reason for the untimeliness of his notice of appeal, nor did he request a waiver of the rule prior to the filing of his notice. As noted above, waiver should only occur when "the interests of justice" requires such. *Rockwell*, 280 S.W.3d at 214. The defendant has failed to provide an explanation for his untimely notice, and therefore, the "interests of justice" do not mandate the waiver of the requirement. Accordingly, the instant appeal is dismissed.

Moreover, even had this Court deemed the waiver of the timeliness requirement to be in the interest of justice, the trial court did not abuse its discretion in denying the defendant's request for probation. In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id.* § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter,* 254 S.W.3d 335, 345 (Tenn. 2008).

---

[4] Rule 21(a) provides that "the date of the act, event, or default after which the designated period of time begins to run shall not be included." March 24, 2025, the date of the sentencing, is not included, therefore leaving 7 days in the month of March which are deductible against the 30-day time period required in Rule 21(a). The residual 23 days of the 30-day period are the days of April 1 - 23, inclusive. The notice of appeal had to be filed on or before April 23, 2025.

Generally, probation is available to a defendant sentenced to ten years or less. Tenn. Code Ann. § 40-35-303(a). In determining whether incarceration is appropriate, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5).

A trial court's decision to grant or deny probation is reviewed under an abuse of discretion standard with a presumption of reasonableness when the sentence reflects the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d at 278-79. "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* Tenn. Code Ann. § 40-35-303(b); *State v. Russell*, 773 S.W.2d 913, 915 (Tenn. 1989); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

Here, because the sentence imposed upon the defendant was ten years or less, he was eligible for probation. Tenn. Code Ann. § 40-35-303(a). During the sentencing hearing, the trial court stated that it reviewed the evidence, the presentence report, the sex-offender risk assessment, the defendant's mental condition and his social history. Further, the trial court stated on the record that it applied enhancement factor (7), the offense was committed to gratify the defendant's desire for sexual pleasure or excitement. *See* Tenn. Code Ann. § 40-35-114.

Additionally, when addressing whether confinement was necessary to protect society and avoid depreciating the seriousness of the offense, the trial court found that the

defendant had a "high likelihood of re-offending." The trial court gave great weight to the defendant's classification as "high risk" by the psychosexual evaluation and took particular note of the defendant's denial of the assault and his belief that the "victim wasn't a victim." These determinations are findings on the record that alternative sentencing was not suitable for this defendant and make it apparent that the trial court applied the purposes and principles of sentencing before imposing confinement.

Accordingly, the record shows that the trial court denied the defendant's request for probation based not only upon the need to provide a deterrence, but also because alternative sentencing was inappropriate for this defendant. Based on our review of the record, the trial court did not abuse its discretion when it imposed confinement. Therefore, even had the defendant timely filed his notice of appeal, he would not be entitled to relief.

### *Conclusion*

Based on the foregoing authorities and reasoning, we conclude the interests of justice do not mandate waiver of the timeliness requirement and, therefore, dismiss the appeal.

s/ *J. ROSS DYER*
J. ROSS DYER, JUDGE